UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:22-CV-00317-FDW-DCK

| | |
|---|---|
| SONYA JACKSON-SHAKESPEARE AND COLIN SHAKESPEARE, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| NOVANT HEALTHCARE INC., THE PRESBYTERIAN HOSPITAL D/B/A NOVANT HEALTH PRESBYTERIAN MEDICAL CENTER, AND FABIOLA PIERCY, | ) ) ) ) ) ) ) |
| Defendants. | ) ) ) ) |

**ORDER**

**THIS MATTER** is before the Court on several motions: Defendants' Motion to Dismiss and for Sanctions, (Doc. No. 40); Plaintiffs' Objections to the Memorandum and Recommendation recommending the Court DENY that part of the motion to dismiss and GRANT sanctions, (Doc. Nos. 60, 68); Defendants' Motion to Dismiss pursuant to Rule 12(b)(6), (Doc. No. 42); Defendants' Motion to Exclude Plaintiffs' Experts, (Doc. No. 44); and Defendants' Motion for Summary Judgment, (Doc. No. 46). These motions have been fully briefed. For the reasons set forth below, Defendant's Objections to the M&R are OVERRULED, the M&R is ADOPTED AND AFFIRMED, the Motion for Sanctions is GRANTED; the Motions to Dismiss are DENIED; the Motion to Exclude Experts is DENIED; and the Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

1

A.      Background

This is a diversity action arising out of alleged medical malpractice. Plaintiffs allege, and Defendants deny, that Defendant Fabiola Piercy, a nurse, who worked at Presbyterian Hospital breached the standard of care when she twice administered Hydralazine intravenously to Plaintiff Colin Shakespeare ("Mr. Shakespeare") on January 9, 2020, and allegedly caused him to suffer a second stroke. Plaintiffs assert claims for medical malpractice, negligent infliction of emotional distress, negligent hiring and supervision, loss of consortium/alienation of affections, and punitive damages.

B.      Motion to Dismiss

Defendants move to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to comply with North Carolina Rule of Civil Procedure 9(j), which is a state rule of civil procedure that requires any complaint alleging medical malpractice contain the pre-filing certification of a medical expert. Without this certification, Defendants contend Plaintiffs have failed to state a cause of action for negligence and negligent hiring and supervision under North Carolina law. "The North Carolina General Assembly specifically enacted Rule 9(j) with its reliance on North Carolina Rule [of Evidence] 702 'in part, to protect defendants from having to defend frivolous medical malpractice actions by ensuring that before a complaint for medical malpractice is filed, a competent medical professional has reviewed the conduct of the defendants and concluded that the conduct did not meet the applicable standard of care.'" Hines v. Correct Care Sols., LLC, 604 F. App'x 256, 258 (4th Cir. 2015) (quoting Estate of Waters v. Jarman, 547 S.E.2d 142, 144 (N.C. Ct. App. 2001) (quoting Webb v. Nash Hosps., Inc., 516 S.E.2d 191, 194 (N.C. Ct. App. 1999))). Plaintiffs contend this state rule does not govern actions filed in federal court.

The law as to whether North Carolina's Rule 9(j) applies in federal cases is murky, at best. In 2013, the Fourth Circuit held—in an unpublished case—that "a Rule 9(j) certification is a mandatory requirement for a plaintiff in a North Carolina medical malpractice action." Littlepaige v. United States, 528 F. App'x 289, 292-93 (4th Cir. 2013); see also Hines v. Correct Care Sols., LLC, 604 F. App'x 256, 257 (4th Cir. 2015) (affirming dismissal by district court because the complaint did not meet N.C. R. Civ. P. 9(j)'s requirements and was therefore both facially and substantively deficient). In 2021, however, the Fourth Circuit held that an analogous state-law pleading requirement in West Virginia did *not* apply in federal court in a case brought under the Federal Tort Claims Act. Pledger v. Lynch, 5 F.4th 511, 517–24 (4th Cir. 2021). The West Virginia statute at issue in Pledger required a plaintiff bringing medical malpractice claims under West Virginia law to "serve on each putative defendant, at least thirty days prior to filing suit, a notice of claim that includes a 'screening certificate of merit' from a health care provider who qualifies as an expert under state law." Id. at 518 (citing W. Va. Code § 55-7B-6(a)-(b)). The Fourth Circuit applied the two-step framework articulated by the Supreme Court in Shady Gove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 398, (2010), to "mediat[e] any potential conflict" between West Virginia's statutory pre-suit certification requirement and the Federal Rules of Civil Procedure. The Fourth Circuit held the question of "whether a plaintiff must obtain an expert certificate of merit before he may file and maintain a medical malpractice suit" is answered in the negative by the Federal Rules of Civil Procedure because no such requirement exists. Pledger, 5 F.4th at 520. In other words, the state certificate requirement "is displaced by the Federal Rules . . . ." Id. To be clear, Pledger recognized that nearly "half of all states similarly demand that medical malpractice plaintiffs secure some sort of early support from a qualifying expert," and the Fourth Circuit explicitly joined the "growing consensus that

3

certificate requirements . . . do not govern actions in federal court, because they conflict with and are thus supplanted by the Federal Rules of Civil Procedure." 5 F.4th at 518 (citing Gallivan v. United States, 943 F.3d 291, 294 (6th Cir. 2019); Young v. United States, 942 F.3d 349, 351 (7th Cir. 2019)).

Several district courts in North Carolina—applying Pledger—have agreed with Plaintiffs' contention here; that is, "In light of Pledger, N.C. Rule 9(j) does not apply in federal court." Vickers v. United States, No. 1:20-CV-00092-MR-WCM, 2021 WL 5769991, at *10 (W.D.N.C. Dec. 6, 2021) (collecting cases); see also Alston v. Locklear, No. 1:19-CV-96, 2022 WL 1137229, at *7 (M.D.N.C. Apr. 18, 2022) ("Any failure to comply with Rule 9(j) is not a basis to dismiss [the plaitniff's] medical malpractice claim filed against [the defendant] in federal court. Rule 9(j) is inconsistent with the Federal Rules of Civil Procedure's pleading requirements."); Saylon v. United States, No. 5:20CV176, 2021 WL 3160425, at *3–4 (E.D.N.C. July 26, 2021) ("Here, Rule 9(j) provides an additional, heightened, pleading requirement for medical malpractice claims that is not contained in the Federal Rules of Civil Procedure. In addition, Rule 9(j) is a requirement contained in North Carolina procedural rules, and it does not alter the substantive elements of a medical malpractice claim. Thus, like the West Virginia certification requirement, it is not a substantive rule, but rather a procedural rule."); Richardson v. Wellpath Health Care, No. 1:20CV777, 2021 WL 5235334, at *7, *11 (M.D.N.C. Nov. 10, 2021) (recommending against dismissal of the plaintiff's medical malpractice case, in part, because Pledger has "rendered Rule 9(j) a nullity in federal court"). This Court is bound by published Fourth Circuit precedent. See United States v. Collins, 415 F.3d 304, 311 (4th Cir. 2005) (citations omitted) (noting that district courts must follow a Fourth Circuit decision unless it is "overruled by a subsequent en banc opinion . . . or a superseding contrary decision of the Supreme Court"). Notably, the Fourth Circuit denied

the petition to rehear the Pledger case en banc. See Pledger v. Lynch, No. 18-2213 (4th Cir. Nov. 18, 2021) (Docket No. 66, Order). In light of Pledger, the Court concludes Plaintiffs' clear failure to comply with Rule 9(j) of the North Carolina Rules of Civil Procedure does not mandate dismissal of the complaint in federal court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Requiring plaintiffs to gather expert evidence before suing is unnecessary in determining a claim's plausibility. See Pledger, 5 F.4th at 520 (citing Gallivan, 943 F.3d at 293) ("Plaintiffs need not gather any expert evidence or serve it on defendants 'for a claim to be plausible.'"). Plaintiffs' Amended Complaint satisfies the requirements of the applicable Federal Rules of Civil Procedure. For these reasons, the Court DENIES Defendants' Motion to Dismiss.

C.  Objections to Memorandum and Recommendation

Next, and because it impacts the other pending motion regarding admissibility of experts and summary judgment, the Court turns to Plaintiffs' Objections to the Memorandum and Recommendation ("M&R"). Following multiple discovery disputes among the parties' and Plaintiffs' failure to comply with the court's orders regarding discovery, Defendants moved to dismiss this case pursuant to Fed. R. Civ. P. 41(d) and 37(b) and for alternative relief of sanctions pursuant to Fed. R. Civ. P. 37(b). During various stages of this litigation, the Magistrate Judge who issued the M&R held discovery dispute conferences and issued orders resolving those disputes and compelling Plaintiffs' counsel to make certain productions. The M&R recounted the prior disputes and orders and, in light of Plaintiffs' conduct, recommends this Court not dismiss the case but instead exclude Plaintiffs' experts' testimony, dismiss Plaintiffs' Negligence Infliction of Emotional Distress claim, and disallow damages for lost income. Plaintiffs now object to the M&R and—again as they did in briefing on the motions at bar in the M&R—contend Plaintiffs complied with prior orders by providing complete expert reports that were supplemented via

deposition testimony, did not attend certain depositions because they were improperly noticed by Defendants, and provided appropriate financial records to support their loss of income claim. Notably, Plaintiffs' do not object to the M&R's explanation of the procedural history of the multiple discovery disputes in this matter, and the Court adopts those findings as set forth in the M&R.

The district court has authority to assign nondispositive pretrial matters pending before the Court to a magistrate judge to "hear and determine." 28 U.S.C. § 636(b)(1)(A). When reviewing an objection to a magistrate judge's order on a nondispositive matter, the district court must set aside or modify any portion of that order which is clearly erroneous or contrary to law. Id.; Fed. R. Civ. P. 72(a). "Under this standard, a finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Gentry v. Maggie Valley Resort Management, LLC, 2014 WL 12707371, at *1 (W.D.N.C. Apr. 4, 2014) (quoting United States v. U.S. Nat'l Gypsum Co., 333 U.S. 364 (1948)). "Therefore, unless the result compelled by the Magistrate Judge's ruling is contrary to law or clearly erroneous, the Orders of the Magistrate Judge will be affirmed." Stephens v. Wachovia Corp., No. 3:06-cv-246, 2008 WL 686214, at *3 (W.D.N.C. Mar. 7, 2008). "Courts have consistently found discovery motions to be nondispositive." Federal Election Commission v. Christian Coalition, 178 F.R.D. 456, 459 (E.D. Va. 1998); Gupta v. Freddie Mac, 823 Fed. App'x 225, 226 (4th Cir. 2020); Mvuri v. American Airlines, Inc., 776 Fed. App'x 810, 810-11 (4th Cir. 2019) (dismissing appeal because plaintiff failed to object to magistrate judge's nondispositive order on motion to compel).

Federal Rule of Civil Procedure 37 allows the court to impose sanctions on a party who fails comply with a court order compelling the party to make disclosures or to cooperate in

6

discovery. Sanctions vary, but they can be as severe as dismissal. See id. 37(b)(2)(A). Courts have considerable discretion in determining whether sanctions are appropriate, and the Fourth Circuit has adopted a four-factor test to determine which Rule 37 sanctions are appropriate in a given case. See, e.g., Anderson v. Found. for Advancement, 155 F.3d 500, 504 (4th Cir. 1998). In selecting an appropriate sanction, the court should consider: "'(1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.'" Mey v. Phillips, 71 F.4th 203, 218 (4th Cir. 2023) (quoting Wilson v. Volkswagen of Am., Inc., 561 F.2d 494, 496 (4th Cir. 1977)).

In large part, Plaintiffs' objections and briefing simply restate the arguments presented multiple times to the Magistrate Judge regarding the sufficiency of their productions, and the arguments now before the undersigned are nearly identical to those raised in opposition to the motion to compel and in opposition to the motion for sanctions for failure to comply with the order on the motion to compel. The M&R considered these arguments and rejected them, and the Court finds no error in that analysis. To support the ruling, the M&R recognized Plaintiffs' arguments failed to address compliance with the motion to compel and instead were more focused on relitigating issues already decided by the Court. In fact, Plaintiffs' objections to this Court are notably lacking any assertion that they supplemented the expert reports in accordance with the court's prior orders. Plaintiffs contend Ms. Boyer's expert report properly identified "references" she relied on in issuing her report, but Plaintiffs offer no explanation for the failure to supplement the report with other materials she later identified in depositions. Plaintiffs acknowledge that Dr. Masiano's report was incomplete, but argues it was "justified and harmless." (Doc. No. 68, p. 10). Instead of asserting compliance, Plaintiffs continue to argue Defendants are not prejudiced by Dr.

7

Masiano's incomplete report. Plaintiffs' recycling of arguments and continued opposition to the court's directives to make more complete discovery productions provide evidence of the unwillingness to comply and bad faith. Moreover, the M&R addressed the impact on Defendants caused by Plaintiffs' continued failure to make full production as directed by the court. Under this record and based on the uncontroverted procedural history of discovery disputes in this matter, the Court finds Plaintiffs appear to have deliberately disregarded the prior discovery rulings and never wholly remedied the discovery violations.

As appropriate sanctions for Plaintiffs' failures to comply with discovery obligations despite multiple opportunities afforded by the court, the M&R recommended sanctions tailored to the precise violations, including exclusion of experts for Plaintiffs' failure to produce complete expert reports and/or properly supplement those reports, dismissal of Plaintiffs' emotional distress claim for Plaintiffs' failure to appear for depositions related to that claim and failure to produce sufficient medical records, and disallow lost income damages for Plaintiffs' failure to produce records to support damages for lost income or earning capacity. Notably, the M&R also considered—and denied—the more drastic sanction of dismissal of this case.

Plaintiffs' objections fail to show how the M&R's conclusion are clearly erroneous or contrary to law, particularly where the Magistrate Judge had resolved the initial discovery disputes, issued orders compelling production, found Plaintiffs failed to comply with those orders and the Federal Rules of Civil Procedure, and recommended sanctions tailored to the specific discovery violations. Without a showing of clear error or that the M&R is contrary to law, it shall be ADOPTED and AFFIRMED as supplemented by the Court's analysis here with one modification. The Court will not exclude the testimony of Ms. Boyer because it appears she identified her references at the end of her expert report and disclosed that she has not previously testified in trial.

The Court will, however, limit her trial testimony to only those references identified in her report, and to the extent Plaintiffs' counsel intends to present additional information not contained in that report because it was disclosed during her deposition, it shall be disallowed for failure to supplement the expert report. Accordingly, the Court excludes the testimony of Patricia Maisano, RN, as a witness at trial; limits the testimony of Morgan Boyer, RN; dismisses Plaintiffs' claim for Negligent Infliction of Emotional Distress against all Defendants; and limits Plaintiffs' evidence on lost income to allow only the evidence disclosed in the specific productions made by Plaintiffs during discovery.

D.  Motion to Exclude Experts

In light of this ruling, Defendants' Motion to Exclude Plaintiffs' Experts is DENIED AS MOOT as to Dr. Masiano. Even were that not the case, the Court notes it finds very persuasive Defendants' arguments and authorities seeking to exclude her, and the Court adopts the reasons stated in Defendants' pleadings, (Doc. Nos. 45, 67), particularly those showing she cannot satisfy North Carolina Rule of Evidence 702, as an alternative basis for excluding her testimony in this case.[1]

---

[1] The Court declines at this stage to extend Pledger's holding to preclude application of N.C. R. Evid. 702. Even after Pledger, "numerous district courts in the Fourth Circuit have generally applied special state evidentiary rules applicable to expert testimony in medical negligence cases where state law otherwise applies." Alston v. Jones, No. 1:19-CV-96, 2022 WL 1423475, at *2 (M.D.N.C. May 5, 2022) (rejecting application of Pledger and explaining, "Ordinarily, the Federal Rules of Evidence control the admissibility of expert testimony. But there are good reasons for following a state evidentiary rule if the claim at issue is governed by state law, as is the case here, and the rule of evidence is intertwined with the substantive law." (cleaned up)). Alston also noted, "In holding that state expert opinion rules apply in medical negligence cases before federal courts on diversity, supplemental jurisdiction, or under the FTCA, other circuits have explicitly pointed to Fed. R. Evid. 601, which requires 'in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision.' These courts have held that Fed. R. Evid. 601 'requires federal courts to apply state rules for expert witness qualification when determining the competency of expert witnesses to testify regarding medical malpractice claims that turn on questions of state substantive law.'" Alston, No. 1:19-CV-96, 2022 WL 1423475, at *2 (quoting Coleman v. United States, 912 F.3d 824, 831 (5th Cir. 2019); citing Legg v. Chopra, 286 F.3d 286, 289–92 (6th Cir. 2002); McDowell v. Brown, 392 F.3d 1283, 1294–95 (11th Cir. 2004); Liebsack v. United States, 731 F.3d 850, 855–57 (9th Cir. 2013)).

As to the qualifications of Ms. Boyer, the Court has evaluated the full record and authorities cited by the parties and concludes the admissibility of her testimony is to be better evaluated at trial. In large part, Defendants' arguments regarding Ms. Boyer's qualifications and testimony relate more to the weight—rather than admissibility of—her testimony. Further, there appears to be a factual issue as to whether Ms. Boyer can satisfy the requirements of North Carolina Rule of Evidence 702, and additional foundational testimony, as well as argument, would aid the Court. Thus, the Court will deny the motion as to Ms. Boyer without prejudice to Defendants' ability to renew it at trial.

E.      Summary Judgment

Defendants move for summary judgment on all claims against them.[2] The applicable law is well settled. Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3.

---

[2] Since the Court has dismissed the NIED claim above, the Court DENIES AS MOOT the motion for summary judgment on that claim.

10

The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. This Court is bound to consider only evidence admissible at trial. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted). When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007).

Defendant Novant Health (misidentified as "Novant Healthcare, Inc." in the First Amended Complaint) moves for summary judgment on all claims against it because Novant Health was in no way affiliated with the medical care rendered to Mr. Shakespeare. In support of their motion, Novant Health provides an affidavit indicating that while Novant Health is the "ultimate corporate parent of a number of . . . healthcare facilities," neither the entity nor "any of its employees or agents" provided medical care to Mr. Shakespeare at Presbyterian Hospital in January 2020. (Doc. No. 48-1, p. 3). Novant Health directs the Court to Diggs v. Novant Health, Inc., where the North Carolina Court of Appeals—in a published case—affirmed summary judgment in favor of Novant Health because the plaintiff offered no evidence that Novant Health supervised and controlled the allegedly negligent medical staff. 628 S.E.2d 851, 857 (N.C. Ct. App. 2006). Plaintiffs' opposition to summary judgment concedes that Novant Health is "not liable for [its] 'employment'

11

of persons[,] [b]ut rather, for the policies, customs and traditions [it] created." (Doc. No. 65). Through this concession, Plaintiffs appear to abandon their Negligent Hiring and Supervision claim against Novant Health, and, in any event, given the lack of any evidence or law to suggest Novant Health had any legally-significant role in the alleged wrongdoing, summary judgment for Novant Health is appropriate on the negligent hiring and supervision claim. As to Plaintiffs' other remaining claims against Novant Health for negligence and loss of consortium, Plaintiffs provide no citation to *any* evidence in the record to show a genuine dispute of material fact as to this Defendant's role or responsibility, and Plaintiffs fail to cite to *any* case law to support their arguments that summary judgment is not proper on these claims. In other words, Plaintiffs fail to set forth specific facts showing a genuine issue for trial. See Scott, 550 U.S. at 380 (noting the plaintiff's "version of events is so utterly discredited by the record that no reasonable jury could have believed him"). Under this record, the undisputed evidence establishes that Novant Health was not a healthcare provider, did not render any medical care to Mr. Shakespeare either directly or through any agent, and did not employ the medical staff Plaintiffs allege were negligent. Accordingly, under this record, Defendant Novant Health is entitled to summary judgment.

Defendants Nurse Piercy and the Presbyterian Hospital d/b/a Presbyterian Medical Center seek summary judgment on the claims against them. The Court summarily concludes they are entitled to summary judgment to the extent Plaintiffs assert an alienation of affections claim. The Court questions the plausibility of this claim under North Carolina law, and even after discovery, Plaintiffs fail to identify any evidence to create a dispute of fact on the elements of this claim. Further, Plaintiffs' briefing does not identify any applicable law to support this cause of action against these Defendants. Summary judgment is therefore appropriate. Summary judgment for

12

Piercy and Presbyterian Hospital on this claim includes any asserted claim on behalf of Plaintiffs' children, which is not proper under North Carolina law.

Turning to the remaining causes of action, the Court summarily concludes that minimally sufficient evidence exists that would allow a reasonable juror to find in Plaintiffs' favor on their negligence claim, the negligent hiring and supervision claim, and the loss of consortium claim against these Defendants.

> When a federal court is exercising diversity jurisdiction, the substantive elements of a medical malpractice suit . . . are all questions to be determined by state law. Fitzgerald v. Manning, 679 F.2d 341, 346 (4th Cir. 1982). In North Carolina, a medical malpractice plaintiff must offer evidence establishing: "(1) the applicable standard of care; (2) a breach of such standard of care by the defendant; (3) [that] the injuries suffered by the plaintiff were proximately caused by such breach; and (4) the damages resulting to the plaintiff." Hawkins v. Emergency Med. Physicians of Craven Cty., PLLC, 770 S.E.2d 159, 162 (N.C. Ct. App. 2015) (quoting Purvis v. Moses H. Cone Mem'l Hosp. Serv. Corp., 624 S.E.2d 380, 383 (N.C. Ct. App. 2006)). Because medical issues are typically complex, expert testimony is required to establish causation in North Carolina. Id. at 163.

Riggins v. SSC Yanceyville Operating Co., LLC, 800 F. App'x 151, 155 (4th Cir. 2020). For a plaintiff to succeed on a medical-malpractice claim, "the trier of fact [must be satisfied] by the greater weight of the evidence that the care of [the defendant] health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities under the same or similar circumstances at the time of the alleged act giving rise to the cause of action." N.C. Gen. Stat. § 90-21.12(a).

Here, Plaintiffs direct the Court to sufficient evidence to create disputed questions of material facts concerning the standard of care, a breach of that care, causation, and damages. (See, e.g., Doc. Nos. 65-1, 65-2, 65-3, 65-4). Although not attached to the pleadings on summary judgment, the parties cited to or referenced deposition testimony in the record, and the Court has

13

therefore considered it, particularly as it relates to Plaintiffs' required showing of a standard of care and causation. (See, e.g., Doc. No. 29-3). The Court recognizes that its prior ruling precluding at least one of Plaintiffs' experts from testifying results in very limited expert evidence to support their claims. But this Court's role here is not to weigh the evidence.

Similarly, the record before the Court indicates questions of material fact for the negligent hiring and supervision claim, as well as the loss of consortium claim. The Court will not, however, allow Plaintiffs to recover for any "damages" asserted on behalf of any "loss of consortium" by Plaintiffs' children. Such claim is not appropriate under applicable law or this evidentiary record. In short, there are genuine disputes of material facts to establish Plaintiffs' negligence claim, Mr. Shakespeare's negligent supervision claim, and Mrs. Shakespeare's loss of consortium claim.

Finally, the Court finds that summary judgment for Defendants on Plaintiffs' request for punitive damages is appropriate. Punitive damages may be awarded in North Carolina only if the defendant: (1) is liable for compensatory damages and (2) engaged in fraud, malice, or willful or wanton conduct. N.C. Gen. Stat. § 1D-15(a). "'Willful or wanton conduct' means the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." Id. § 1D-5(7); see also Cockerham-Ellerbee v. Town of Jonesville, 660 S.E.2d 178, 180 (N.C. Ct. App. 2008) ("[A] wanton act is one done with a wicked purpose or . . . done needlessly, manifesting a reckless indifference to the rights of others, and an act is willful when there is a deliberate purpose not to discharge a duty, assumed by contract or imposed by law, necessary for the safety of the person or property of another." (internal quotations omitted)). "Willful or wanton conduct means more than gross negligence." N.C. Gen. Stat. § 1D-5(7). "In the medical context, a medical provider acts willfully and wantonly when she knowingly, consciously, and deliberately places a

14

patient at risk of harm by acting contrary to known protocols and procedures." Clarke v. Mikhail, 779 S.E.2d 150, 160 (N.C. Ct. App. 2015).

While Plaintiffs have withstood Defendants' motion for summary judgment on the claims addressed above, the Court finds *no* evidence that Piercy or Presbyterian Hospital "engaged in fraud, malice, or willful or wanton conduct" sufficient to warrant punitive damages under North Carolina law. In fact, in opposing Defendants' motion, Plaintiffs do not cite to *any* evidence in the record or direct the Court to any testimony to raise even a disputed issue of fact necessary to sustain punitive damages under North Carolina law. Plaintiffs have not pointed to any evidence in the record before the Court of aggravating conduct showing Defendants "*knowingly, consciously, and deliberately* placed" Mr. Shakespeare "at risk of harm by acting contrary to known protocols and procedures." Clarke, 779 S.E.2d at 160. Similarly, Plaintiffs fail to identify any evidence of Defendants' blatant or intentional disregarding of and indifference to Mr. Shakespeare, and Plaintiffs fail to point to any specific protocols or procedures that Defendants violated. Accordingly, summary judgment for Defendants on punitive damages is appropriate.

F.     Docket Call

Finally, this case is set for the Court's January 8, 2024, trial term; however, after reviewing the parties' initial proposed witness lists, evidence lists, and the parties' estimates of trial time, the Court intends to impose time limits for the presentation of opening statements, evidence, and closing arguments in order to achieve efficiency in the presentation of evidence while also ensuring the fundamental fairness to each party at trial.

Accordingly, and to allow the parties and counsel time to adequately prepare their case under court-imposed time constraints, the Court *sua sponte* continues the trial setting to the Court's

15

March 4, 2024, trial term. A pretrial conference shall take place immediately after docket call on March 4, 2024.

In light of the rulings herein, the Court directs to parties to confer, revise their jointly-prepared proposed pretrial order, and submit a supplemental version no later than January 21, 2024, or otherwise inform the Court that the parties do not have any changes. The supplemental filing shall identify the parties' estimate of time for trial in light of the above rulings. Following review of these materials, the Court will promptly issue an order informing the parties of the time limits to be imposed in this matter.

Motions in limine shall be filed by February 1, 2024, with responses to be filed by February 8, 2024, so that the Court can resolve any pretrial issues or schedule a hearing, if necessary, prior to docket call.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss pursuant to Rule 12(b)(6), (Doc. No. 42) is DENIED;

**IT IS FURTHER ORDERED** that Plaintiffs' Objections, (Doc. No. 68), are OVERRULED, the Memorandum and Recommendation, (Doc. No. 60), is ADOPTED AND AFFIRMED as set forth herein, and Defendants' Motion to Dismiss and for Sanctions, (Doc. No. 40) is GRANTED IN PART AND DENIED IN PART;

**IT IS FURTHER ORDERED** that Defendants' Motion to Exclude Plaintiffs' Experts, (Doc. No. 44) is DENIED;

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment, (Doc. No. 46). is GRANTED IN PART AND DENIED IN PART;

**IT IS FURTHER ORDERED** that this matter is continued from the Court's January 8, 2024, trial setting, to the March 4, 2024, term with docket call to take place on March 4, 2024, in

Courtroom #5B of the Charles R. Jonas Federal Building at 9:00 a.m. with a pretrial conference to immediately follow.

**IT IS FURTHER ORDERED** that a supplemental jointly-proposed pretrial order is due by January 21, 2024, and any motions in limine shall be filed by February 1, 2024, and responses to be filed by February 8, 2024.

**IT IS SO ORDERED.**

Signed: December 20, 2023

Frank D. Whitney
United States District Judge